IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WILLIAM WIMBUSH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09CV00358 |
| | ) | |
| PATRICK R. DONAHOE, | ) | |
| Postmaster General, | ) | |
| United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION</u>

BEATY, District Judge

I.    INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment [Doc. #24] pursuant to Federal Rule of Civil Procedure 56.[1]  *Pro Se* Plaintiff William Wimbush ("Plaintiff" or "Mr. Wimbush") originally filed suit in this case against John E. Potter in his official capacity as Postmaster General of the United States Postal Service ("USPS").  John E. Potter has since been succeeded as Postmaster General by Patrick R. Donahoe, who was automatically substituted as Defendant in this action.  Although Plaintiff's Complaint [Doc. #2] does not clearly express the specific factual and legal bases for this action, the Court notes that

---

[1] Defendant also filed a Motion to Strike Inadmissible, Unauthenticated Attachments to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment [Doc. #29]. In view of the fact that Plaintiff is *pro se*, the Court, in considering the attachments, finds that the documents would not impact the Court's decision in this matter. Consequently, the Motion to Strike [Doc. #29] will be denied.

Plaintiff's claims are based on his June 11, 2007, Equal Employment Opportunity ("EEO") Complaint against the USPS, which alleged discrimination in employment on the basis of disability, race, and retaliation. Specifically, Plaintiff claimed that after sustaining an on-the-job injury, which caused him to be out of work for approximately three months, he was discriminated against by the USPS upon his return to work because he was not allowed to return to his prior position as a Supervisor of Customer Service, but was instead assigned to a new supervisory position which was more physically and mentally demanding. For the reasons set forth below, Defendant's Motion for Summary Judgment [Doc. #24] will be GRANTED and all of Plaintiff's claims with be DISMISSED WITH PREJUDICE.

II.     FACTUAL HISTORY

Plaintiff began working for the USPS in August 1990. Between August 1990 and his resignation in June 2007, Plaintiff held various positions within the USPS. In approximately 1998 or 1999, Plaintiff became a Supervisor of Customer Service and was stationed in Durham, North Carolina. From 2002 to 2007, Plaintiff worked as a Supervisor of Customer Service in Greensboro, North Carolina.

On November 24, 2006, while stopped at a traffic light on his way back from delivering a piece of mail and having lunch, Plaintiff's vehicle was rear-ended by another vehicle, causing injuries to his neck and back. The parties do not dispute the on-the-job nature of Plaintiff's injury. Plaintiff remained out of work for approximately three months after sustaining the injury. (Def.'s Mem. in Support of Mot. for Sum. J. [Doc. #25], Ex. A, Wimbush Dep., at 35).

In March 2007, Plaintiff returned to work at the Hilltop Carrier Annex in Greensboro,

where he worked prior to the accident. A Duty Status Report Form signed by Plaintiff's physician and dated March 8, 2007, indicated that Mr. Wimbush had certain work limitations. Specifically, Plaintiff had restrictions relating to climbing, kneeling, bending, stooping, twisting, pulling, and pushing. (Def.'s Mem. in Support of Mot. for Sum. J. [Doc. #25], Ex. E-1).

On March 12, 2007, Plaintiff's manager at the Hilltop Carrier Annex, Edith Strickland, informed Plaintiff that he was being reassigned to a new supervisory position that served both the Spring Valley and Friendly Stations. Plaintiff signed an Offer of Modified Assignment, dated March 12, 2007, indicating his acceptance of the new assignment. (Def.'s Mem. in Support of Mot. for Sum. J. [Doc. #25], Ex. A, Wimbush Dep., Dep. Ex. 1). Plaintiff's salary and grade remained the same as that of his previous Supervisor of Customer Service position. The Offer of Modified Assignment indicated that the new work assignment was a modified assignment related to the November 24, 2006, on-the-job injury, and that the physical requirements for this modified assignment were standing, walking, sitting, fine manipulation, and grasping. Plaintiff contends that the new assignment was more physically and mentally demanding than his original position.

On or about March 19, 2007, Plaintiff submitted a second Duty Status Report Form, signed by his physician and dated March 19, 2007, indicating that he could only work for four hours per day. (Def.'s Mem. in Support of Mot. for Sum. J. [Doc. #25], Ex. E-2). On March 20, 2007, Plaintiff signed a second Offer of Modified Assignment, accepting a new assignment as Supervisor of Customer Service at the Greensboro Processing and Distribution Plant Computer Forwarding Center ("P&DC"). (Def.'s Mem. in Support of Mot. for Sum. J. [Doc. #25],

3

Wimbush Dep., Dep. Ex. 3). The Offer of Modified Assignment indicated that Mr. Wimbush would supervise and oversee Computerized Forwarding Services ("CFS") operations, answer the telephone, input data, and perform other duties as assigned within his limitations. The Offer of Modified Assignment also enumerated the physical requirements of this position, which were walking, standing, and fine manipulation. In this position, Mr. Wimbush worked four hours per day. Plaintiff contends that he explained to his manager at the Spring Valley Station, Crystal Brown, that the new position at the P&DC would require him to drive farther away from his home and to work later hours in the evening. Plaintiff also asserts that he did not know how to do the job required of him in the new P&DC position. Plaintiff's four hour work day restriction only lasted for two weeks because Plaintiff went back to his doctor, who authorized him to return to working eight hours per day. Consequently, the P&DC assignment began on March 22, 2007, and ended on April 5, 2007. After April 5, 2007, Plaintiff returned to the Spring Valley supervisory position.

On or about May 17, 2007, Plaintiff submitted a third Duty Status Report Form signed by his physician and dated May 17, 2007, indicating that he could return to performing his regular full-time work without limitations. (Def.'s Mem in Support of Mot. for Sum. J. [Doc. #25], Ex. E-3). Plaintiff, however, was not permitted to return to his original position as Supervisor of Customer Service at the Hilltop Carrier Annex, but instead was assigned to remain a Supervisor at the Spring Valley Station.

On or about May 21, 2007, Plaintiff received a warning letter from his manager, Crystal Brown. The warning letter indicated that: (1) on April 17, 2007, Mr. Wimbush "failed to follow

4

proper closing procedures by not ensuring that all vehicles were properly secured . . . [and] failed to sign the Daily All Clear Checklist log"; and (2) on April 20, 2007, Mr. Wimbush "failed to properly secure a box of money orders" which were found on April 23, 2007, by the custodian on top of the trash can in Plaintiff's office. (Def.'s Mem. in Support of Mot. for Sum. J. [Doc. #25], Ex. E-4).

On or about June 4, 2007, Mr. Wimbush received a Notice of Proposed Letter of Warning in Lieu of Time-Off Seven (7) Day Suspension. According to the Notice, Mr. Wimbush: (1) on May 12, 2007, and May 15, 2007, "failed to follow instructions when [he] worked additional hours without prior authorization"; (2) on May 14, 2007, "failed to follow instructions when [he] failed to order stamps at Spring Valley and Friendly Stations"; (3) on May 18, 2007, "failed to follow instructions when [he] failed to report the daily work hours and volume to the Main Office"; and (4) on May 7, 2007, was "involved in a 'preventable accident', when [he] failed to open a safe" according to normal safety procedures. (Def.'s Mem. in Support of Mot. for Sum. J. [Doc. #25], Ex. E-5). On June 7, 2007, Plaintiff submitted an unsolicited Resignation Form, indicating that he resigned due to "unfair, negative treatment, harassment, and unprofessional leadership." (Def.'s Mem. in Support of Mot. for Sum. J. [Doc. #25], Ex. A, Wimbush Dep., Dep. Ex. 8).

On June 11, 2007, Plaintiff filed a formal EEO Complaint, alleging discrimination by the USPS on the basis of disability, race, and retaliation. (Def.'s Mem. in Support of Mot. for Sum. J. [Doc. #25], Ex. E-8). Specifically, Plaintiff alleged that: (1) upon his return to duty from an on-the-job injury, he was removed from his previous position without any explanation and was reassigned to the Spring Valley Station, to a position that he did not know anything about and

5

which he found to be much more demanding physically and mentally; (2) on March 22, 2007, he was reassigned to the P&DC after his manager, Crystal Brown, was notified that he could only work four hours per day; (3) his manager, Crystal Brown, was quick to write him up for issues concerning his new job, but she only had a verbal discussion with another employee who failed to scan a piece of express mail rather than issuing a letter of warning to that employee; (4) his manager, Crystal Brown, did not return his leave request slips in a timely manner; (5) on April 14, 2007, his duty hours were changed; (6) he was charged Absent Without Leave (AWOL) from April 28, 2007, through May 1, 2007; (7) on May 15, 2007, his doctor informed management to return him to his regular position, but they did not comply; (8) he was issued a letter of warning for failure to follow instructions/unacceptable performance; and (9) management wrote him up for working in an unsafe manner.

On August 18, 2008, an EEOC Administrative Judge ("AJ") issued a decision without holding a hearing, finding that the matter was appropriate for summary disposition and finding that the evidence did not support a finding of discrimination. Specifically, the AJ found that Mr. Wimbush could not make the threshold showing that he was disabled within the meaning of the Rehabilitation Act and could not make a prima facie case of disparate treatment under the standard of proof set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). (Def.'s Mem. in Support of Mot. for Sum. J. [Doc. #25], Ex. E-9). On August 28, 2008, a Notice of Final Action was issued, implementing the AJ's decision. Plaintiff appealed and the EEOC Office of Federal Operations affirmed the AJ's decision in its February 13, 2009, opinion, finding that the grant of summary disposition was appropriate, as no

6

genuine dispute of material fact existed. (Def.'s Mem. in Support of Mot. for Sum. J. [Doc. #25], Ex. E-12).

Plaintiff filed this civil action on May 18, 2009, alleging discrimination by his supervisors at the USPS. Defendant now moves for summary judgment [Doc. #24]. Defendant contends that Plaintiff: (1) cannot show that he was disabled within the meaning of the Rehabilitation Act, and therefore, cannot establish a prima facie case of discrimination on the basis of disability; (2) failed to address his race discrimination, hostile work environment, and retaliation claims in his Response in Opposition to Defendant's Motion for Summary Judgment [Doc. #27], and, as a result, Defendant's arguments regarding these claims should be deemed uncontested; and (3) to the extent that Plaintiff's pleadings raise a constructive discharge claim, such a claim cannot properly be brought before the Court because the issue of constructive discharge was not raised in his initial EEO charge. The Court will examine each issue in turn.

III.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

A.    Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Since the substantive law determines materiality, only facts that "might affect the outcome of the suit under the governing law" are considered material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The movant bears the initial burden of demonstrating "the absence of any genuine issues of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Once the movant has met the

7

initial burden, the nonmoving party must "present evidence from which a jury might return a verdict in his favor." <u>Anderson</u>, 477 U.S. at 257, 106 S. Ct. at 2514. There can be "no genuine issue as to any material fact" if the non-movant fails to "make a showing sufficient to establish the existence of an element essential" to his case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex</u>, 477 U.S. at 323, 106 S. Ct. at 2552. While all justifiable inferences are drawn in the favor of the non-movant, he "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 248, 255, 106 S. Ct. at 2510, 2513.

B.      Disability Discrimination

Plaintiff's disability discrimination claims will be construed as having been brought under the Rehabilitation Act of 1973, 29 U.S.C. § 701, <i>et seq.</i>, ("the Rehabilitation Act" or "the Act") given that the Rehabilitation Act is the exclusive means by which a plaintiff may raise claims against federal agencies relating to disability discrimination. <u>Brown v. Henderson</u>, 6 Fed. Appx. 155, 156 (4th Cir. 2001) (unpublished) (finding that "the Postal Service is not subject to suit under the ADA"); <u>Rivera v. Heyman</u>, 157 F.3d 101, 103 (2d Cir. 1998) (finding that "a federal employee . . . has no remedy for employment discrimination under the ADA," and as such, the "sole claim for discrimination on the basis of disability is under the Rehabilitation Act"). The Rehabilitation Act provides that:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive

8

agency or by the United States Postal Service.

29 U.S.C. § 794(a). In determining whether there has been a violation of the Rehabilitation Act, courts rely on the same standard that is applied under the Americans with Disabilities Act ("ADA").[2] See 29 U.S.C. § 794(d); Baird ex rel. Baird v. Rose, 192 F.3d 462, 468 (4th Cir. 1999) (finding that "[b]ecause the language of the two statutes is substantially the same, we apply the same analysis to both"). In the present case, Plaintiff appears to allege two types of disability discrimination. First, Plaintiff appears to allege that the USPS failed to accommodate his alleged disability upon his return to work from an on-the-job injury. Second, Plaintiff appears to indicate that he also suffered disability-based discrimination while working at the Spring Valley Station. While the disability discrimination claims alleged by Plaintiff are comprised of different elements, the first element is the same for both claims in that both claims require that the Plaintiff establish that he was a qualified individual with a "disability" within the meaning of the Rehabilitation Act. Therefore, prior to addressing each claim individually, the Court will determine whether Plaintiff can show that he was a qualified individual with a "disability" within the meaning of the Act.

    1.       Disability Within the Meaning of the Rehabilitation Act

---

[2] The Court notes that Congress amended the ADA in 2008 "to correct what it viewed as an overtly restrictive interpretation of the statute's terms that had been adopted by the Supreme Court" in Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002), and Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999). Cochran v. Holder, 436 Fed. Appx. 227, 231 (4th Cir. 2011) (unpublished); see ADA Amendments Act of 2008, Pub. L. No. 110-325 ("ADAAA"). The ADAAA made it easier for a plaintiff to demonstrate his disability under the Rehabilitation Act. Cochran, 436 Fed. Appx. at 231. In Cochran, an unpublished decision, the Fourth Circuit concluded that the ADAAA does not apply retroactively. Cochran, 436 Fed. Appx. at 232. Therefore, the ADAAA's more relaxed standard does not apply to this case because the ADAAA does not apply to conduct occurring before its January 1, 2009, effective date.

9

The first element of a prima facie case of disability discrimination requires Plaintiff to establish that he was an individual with a "disability" within the meaning of the Act. An individual is disabled within the meaning of the Rehabilitation Act if he: (1) has a physical or mental impairment which substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1); Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 467 (4th Cir. 2002); Burton v. Potter, 339 F. Supp. 2d 706, 712 (M.D.N.C. 2004). Under the applicable standard, the word "substantially" sets a high bar and "an individual must have an impairment that prevents or severely restricts the individual from performing a major life activity." Cochran, 436 Fed. Appx. at 232 (quoting Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002) (abrogated by statute effective January 1, 2009)). Major life activities include: caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working. 29 C.F.R. §1630.2(i)(1). In order to determine whether an impairment is substantially limiting, courts consider: (1) the nature and severity of the impairment; (2) its duration or expected duration; and (3) its permanent or long-term impact. Pollard, 281 F.3d at 467-68; Burton, 339 F. Supp. 2d at 712. The Fourth Circuit has indicated that "[a]n impairment simply cannot be a substantial limitation on a major life activity if it is expected to improve in a relatively short period of time." Pollard, 281 F.3d at 468 (finding that a nine-month absence from work due to a back injury for which the plaintiff had surgery was insufficient to demonstrate that a major life activity had been

10

substantially limited).

In the present case, Plaintiff contends that after his on-the-job injury, he suffered a back injury which caused him to be disabled. While it is true that Plaintiff returned to work with certain limitations imposed by his physician, not all limitations qualify as disabilities within the meaning of the Act. See Pollard, 281 F.3d at 468; Cochran, 436 Fed. Appx. at 232 (finding that "[m]edical diagnosis alone cannot demonstrate substantiality"). Instead, Plaintiff must show that he had a physical or mental impairment that significantly restricted a major life activity. Pollard, 281 F.3d at 467-68. Plaintiff did not indicate in his pleadings which major life activity he believes to have been substantially limited by his back injury. In fact, Plaintiff failed to present any evidence to establish that any major life activity was significantly limited by his back injury.[3] While Plaintiff was indeed recovering from a back injury, both Plaintiff and his physician expected his limitations to be temporary. Plaintiff acknowledged in his deposition that he did not have an ongoing or permanent disability. (Def.'s Mem. in Support of Mot. for Sum. J. [Doc. #25], Ex. A, Wimbush Dep., at 76). In fact, approximately two months after returning to work, Plaintiff's doctor removed his limitations and authorized him to work in the same manner as he had done prior to suffering the injury. The temporary nature of Plaintiff's limitations render

---

[3] To the extent that Plaintiff would contend that the major life activity of working was substantially limited by his back injury, Plaintiff must have been precluded from a substantial class of jobs or a broad range of jobs. Taylor v. Federal Express Corp., 429 F.3d 461, 464 (4th Cir. 2005) (quoting Sutton, 527 U.S. at 492, 119 S. Ct. at 2151, and Toyota, 534 U.S. at 200, 122 S. Ct. at 692-93). If jobs "utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs . . . [and] if a host of different types of jobs are available, one is not precluded from a broad range of jobs." Id. Here, the record clearly shows that Plaintiff was not precluded from a substantial class of jobs or a broad range or jobs as a result of his injury.

11

them inadequate to sustain a claim predicated upon a showing that the impairment substantially limited one or more of his major life activities. While temporary impairments "present a spectrum of cases and at some point the duration of an impairment could be so long that it cannot properly be characterized as temporary," that was not the case in Plaintiff's situation. Pollard, 281 F.3d at 469. Plaintiff's physical limitations were truly temporary in duration, as they were removed by his physician within two months of his return to work. Thus, Plaintiff cannot show that his temporary limitations substantially limited one or more of his major life activities. Therefore, Plaintiff cannot show that he was an individual with a "disability" in this regard. See Pollard, 281 F.3d at 467-69.

Under the Rehabilitation Act, Plaintiff may also establish that he was disabled within the meaning of the Act by showing that he had a record of a disability. 42 U.S.C. § 12102(1); Pollard, 281 F.3d at 467 (4th Cir. 2002); Burton, 339 F. Supp. 2d at 712. An individual has a record of a disability "if the individual has a history of . . . a mental or physical impairment that substantially limits one or more major life activities." Cochran, 436 Fed. Appx. at 233. However, a "showing that Plaintiff had been diagnosed with an illness or condition is not enough to establish a record of a substantially limiting impairment." Burton, 339 F. Supp. 2d at 713. In the present case, while Plaintiff can show that he had been diagnosed with a back condition, Plaintiff cannot show that he had a history of a mental or physical impairment that substantially limited one or more of his major life activities. Therefore, Plaintiff cannot establish that he was disabled within the meaning of the Act in this regard.

Additionally, Plaintiff may also establish that he was disabled within the meaning of the

12

Act by showing that his employer regarded him as disabled. 42 U.S.C. § 12102(1); <u>Pollard</u>, 281 F.3d at 467 (4th Cir. 2002); <u>Burton</u>, 339 F. Supp. 2d at 712. In order to establish that the USPS regarded him as disabled, Plaintiff must show that the USPS "entertained misperceptions about him by believing he had a substantially limiting impairment that he did not in fact have or that was not so limiting." <u>Cochran</u>, 435 Fed. Appx. at 233 (quoting <u>Sutton</u>, 527 U.S. at 489, 119 S. Ct. at 2149-50). Simply believing that Plaintiff had an impairment is not enough under this inquiry. <u>Id.</u> Rather, Plaintiff must prove that the USPS believed that his impairment substantially limited a major life activity. <u>Id.</u> While the USPS was aware of Plaintiff's temporary limitations and attempted to accommodate those restrictions, "[a]ttempts to respond to documented medical restrictions will not, standing alone, give rise to a finding of 'regarded as' disability." <u>Dean v. Philip Morris USA Inc.</u>, No. 1:02CV149, 2003 WL 21754998, at *4 (M.D.N.C. July 29, 2003) (unpublished) (citing <u>Plant v. Morton Int'l, Inc.</u>, 212 F.3d 929, 937-38 (6th Cir. 2000)). As noted above, Plaintiff's impairments were temporary limitations, and he has failed to present any evidence which would indicate or suggest that the USPS entertained misperceptions about him by believing he had a substantially limiting impairment that he did not in fact have or that was not so limiting of a major life activity. There is no evidence that the USPS regarded Plaintiff's impairments as anything other than temporary limitations from which Plaintiff would soon recover. Therefore, Plaintiff fails to make a showing of a disability within the meaning of the Rehabilitation Act.

Because Plaintiff cannot establish that he was an individual with a "disability" within the meaning of the Act, summary judgment is appropriate with regard to Plaintiff's disability

13

discrimination claims. While the Court may end its analysis of Plaintiff's disability discrimination claims at this point due to his failure to establish that he was disabled within the meaning of the Act, the Court will nonetheless address the remaining elements of Plaintiff's disability discrimination claims, beginning with his failure to accommodate claim and also addressing his disability-based discrimination claim.

a.      Failure to Accommodate Claim

Plaintiff asserted that the USPS did not reasonably accommodate his physical limitations when he returned to work after an on-the-job injury because he was transferred to a new position for which he was not mentally and physically prepared. To establish a prima facie case of disability discrimination under the Rehabilitation Act as it relates to a failure to accommodate, Plaintiff must show that: (1) he was disabled within the meaning of the Act; (2) his employer had notice of his disability; (3) with reasonable accommodation he could perform the essential functions of the position; and (4) the employer refused to make such accommodation. <u>Rhoads v. F.D.I.C.</u>, 257 F.3d 373, 387, n.11 (4th Cir. 2001).

As already established above, Plaintiff fails to make a showing that he was disabled within the meaning of the Act. However, even if Plaintiff could establish that he was disabled, Plaintiff cannot establish the second prong of a prima facie case, which is that his employer had notice of the disability. The USPS knew of Plaintiff's temporary work limitations resulting from the on-the-job injury. As noted above, the USPS regarded Plaintiff's injury as a temporary limitation, not as a disability. Therefore, Plaintiff cannot establish that the USPS had notice of his alleged disability.

14

Furthermore, even if Plaintiff could establish that he was disabled and that the USPS had notice of the disability, he cannot establish the third and fourth elements of a prima facie case of disability discrimination based on a failure to accommodate, which require him to show that he was able to perform the essential functions of the position at issue with reasonable accommodation and that his employer failed to make such accommodation. Plaintiff acknowledged that his temporary limitations prevented him from performing his original job as a Supervisor of Customer Service at the Hilltop Carrier Annex. It is precisely because of Plaintiff's temporary inability to perform the essential functions of the position at the Hilltop Carrier Annex that he was offered a modified assignment as a Supervisor at the Spring Valley Station. The record clearly shows that although Plaintiff did not have a disability, the USPS, relying on the Duty Status Report signed by Plaintiff's physician on March 8, 2007, tried to accommodate Plaintiff's temporary limitations by transferring him to a vacant position at the Spring Valley Station, which the USPS viewed as a limited duty position consistent with Plaintiff's temporary limitations. Plaintiff's transfer to a vacant position of equivalent salary and grade within the USPS was a reasonable accommodation. See 29 C.F.R. § 1630.2(o)(2) (indicating that reasonable accommodation may include "reassignment to a vacant position"). In addition, when further hourly work restrictions were imposed by Plaintiff's physician, Plaintiff's manager provided yet another reasonable accommodation by transferring Plaintiff to a vacant position at the P&DC in Greensboro, North Carolina, which allowed Plaintiff to work for only four hours per day, as recommended by his physician. When Plaintiff's physician subsequently removed the four hour work limitation, which lasted for approximately two weeks, Plaintiff returned to the

15

Spring Valley supervisory position.  Thus, during the period that Plaintiff could not perform his original job, the USPS accommodated his limitations by providing modified, limited duty assignments in other locations.  Plaintiff, therefore, cannot show that he was able to perform the essential functions of his original position with reasonable accommodation and that USPS failed to make such accommodations.  Therefore, the Court finds that summary judgment is appropriate with regard to Plaintiff's failure to accommodate claim.

       b.       Disability-Based Discrimination Claim

       To the extent that Plaintiff would allege that he experienced disability-based discrimination, the Fourth Circuit has applied the McDonnell Douglas Corp. v. Green burden shifting framework to such cases arising under the Rehabilitation Act.  Perry v. Computer Services Corp., 429 Fed. Appx. 218, 219-20 (4th Cir. 2011) (unpublished) (explaining that "[d]isability discrimination . . . claims under the . . . Rehabilitation Act are evaluated under the McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), 'pretext' framework"); see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 57-58 (4th Cir. 1995).  Under the McDonnell Douglas framework, if the plaintiff is successful in establishing by a preponderance of the evidence a prima facie case of discrimination, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for its action.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981); Perry, 429 Fed. Appx. at 220.  If the defendant provides evidence of a nondiscriminatory reason for its action, the plaintiff, who bears the ultimate burden of persuasion, must show by a preponderance of the evidence that the proffered reason was a pretext for discrimination. Hill

16

v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th 2004); Perry, 429 Fed. Appx. at 220; see Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-48, 120 S. Ct. 2097, 2108-09, 147 L. Ed. 2d 105 (2000).

To establish a prima facie case of disability-based discrimination, Plaintiff must establish that he (1) is disabled within the meaning of the Act, (2) was otherwise qualified for the position; and (3) suffered an adverse employment action solely on the basis of disability. Baird, 192 F.3d at 467; Doe v. Univ. of Maryland Med. Sys. Corp., 50 F.3d 1261, 1265 (4th Cir. 1995); Perry, 429 Fed. Appx. at 220 (citing Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005)); Burton, 339 F. Supp. 2d at 712. An adverse employment action is a "discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F. 3d 371, 375-76 (4th Cir. 2004).

In the present case, as discussed above, Plaintiff cannot establish that he is disabled within the meaning of the Rehabilitation Act. However, even if Plaintiff could establish that he was disabled and, even assuming without deciding, that he was otherwise qualified for the position, Plaintiff cannot establish that he suffered an adverse employment action. To the extent that Plaintiff would contend that the letters of warning that he received from his manager were adverse employment actions, Plaintiff provided no evidence to support such a contention, in that, Plaintiff provided no evidence which indicates that the terms, conditions, or benefits of his employment were adversely affected by the letters of warning that were issued to him.

To the extent that Plaintiff would contend that his transfers to the other positions were adverse employment actions, it is clear that both transfers were initiated by Plaintiff's filing of a

17

Duty Status Report Form, which indicated the work limitations imposed by his physician. The reassignments were reasonable accommodations of Plaintiff's temporary work limitations and Plaintiff accepted both transfers by signing both Offers of Modified Assignment. Furthermore, the transfers did not adversely affect the terms, conditions or benefits of Plaintiff's employment as he retained the same salary and grade as his original position, which he could not perform at the time because of his temporary limitations. Additionally, the Fourth Circuit has indicated that the "mere fact that a new job assignment is less appealing to the employee . . . does not constitute adverse employment action." James, 368 F.3d at 376-77 (finding in the Title VII context that "[a]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position"). Therefore, Plaintiff's transfers did not constitute adverse employment actions. Further still, Plaintiff did not suffer an adverse employment action because he was not terminated from his job at the USPS. Plaintiff voluntarily resigned from the USPS in June 2007 and, as discussed below, was not constructively discharged.

As a further matter, even if Plaintiff could establish a prima facie case of disability discrimination, he is unable to rebut the USPS' nondiscriminatory reasons for transferring him to the new position upon his return to work. The USPS contends that Plaintiff was reassigned as an accommodation to his medical restriction and to provide him with finance experience in a supervisory capacity, which would provide him with the necessary experience needed to be upwardly mobile in the USPS. (Def.'s Mem. in Support of Mot. for Sum. J. [Doc #25], Ex. B, D).

18

Plaintiff provided no evidence to show that the nondiscriminatory reasons proffered by the USPS as a basis for his transfers are a pretext for discrimination. Consequently, Plaintiff fails to meet his burden under the McDonnell Douglas test. As such, the Court finds that summary judgment is appropriate with regard to Plaintiff's disability-based discrimination claim.

C.    Constructive Discharge Claim

To the extent that Plaintiff alleged that he was constructively discharged, he bears the burden of establishing that "his employer deliberately made his working conditions intolerable and thereby forced him to quit his job."[4] Long v. Dunlop Sports Grp. Americas, Inc., 506 F.3d 299, 303-04 (4th Cir. 2007) (citing Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1350 (4th Cir. 1995)). In order to demonstrate constructive discharge, a plaintiff must allege and prove two elements: (1) deliberateness of the employer's actions, and (2) the objective intolerability of the working conditions." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 186-87 (4th Cir. 2004); Martin, 48 F.3d at 1354.

In the present case, Plaintiff failed to establish either of the two required elements. Plaintiff contends that he was forced out of his chosen career "by [Defendant's] cruel and unbearable tactics." (Pl.'s Resp. in Opposition of Mot. for Sum. J. [Doc. #27] ). However, Plaintiff failed to provide any evidence that would support this contention. To the extent that

---

[4] To the extent that Defendant contended that Plaintiff's constructive discharge claim was not properly exhausted, the Court finds that, if liberally construed, a constructive discharge claim can reasonably be expected to follow from the charge of discrimination as alleged in Plaintiff's EEO Complaint. See Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 132 (4th Cir. 2002) (citing Chisholm v. U.S. Postal Serv., 665 F. 2d 482, 491 (4th Cir. 1981) (finding that an "administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination")).

Plaintiff asserts that the letters of warning that he received from his manager constituted cruel treatment, the letters of warning merely related to his failure to follow USPS procedures. As such, the letters of warning alone do not provide a sufficient basis to establish that Plaintiff's working conditions were so intolerable that a reasonable person would feel compelled to resign. Instead, the letters of warning merely memorialize his manager's view that Plaintiff was not maintaining a satisfactory job performance. Plaintiff, in his deposition, only asserted that when he returned to work he was not provided any help or support, and that he perceived that he was disliked and not wanted at the USPS. (Def.'s Mem. in Support of Mot. for Sum. J. [Doc.#25], Ex. A, Wimbush Dep., at 80). Plaintiff's contentions are not supported and are merely his personal opinions. As such, there is no evidence before the Court that would indicate that Plaintiff's working conditions were so intolerable as to compel a reasonable person to resign. Furthermore, the Fourth Circuit has found that "dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." Williams v. Giant Food Inc., 370 F.3d 423, 434 (4th Cir. 2004). Summary judgment is therefore appropriate on Plaintiff's constructive discharge claim.

      D.     Race Discrimination, Hostile Work Environment, and Retaliation

Plaintiff initially asserted claims of race discrimination, hostile work environment, and retaliation, but Defendant argues that Plaintiff failed to address these claims in his Response in Opposition to Defendant's Motion for Summary Judgment [Doc. #27]. Defendant further contends that because Plaintiff failed to address Defendant's arguments regarding these claims,

20

the Court should find in Defendant's favor pursuant to Local Rule 56.1(d), which provides that "the failure to file a response may cause the court to find that the motion is uncontested." For the same reasons, the Court agrees that summary judgment on Plaintiff's race discrimination, hostile work environment, and retaliation claims is properly granted as unopposed. Moreover, the Court notes that even if those claims are considered on the merits, Plaintiff, as discussed below, has failed to provide sufficient evidence to raise any genuine issue of material fact on these various claims.

### 1.    Race Discrimination Claim

First of all, with respect to Plaintiff's claim of race discrimination, Title VII prohibits an employer from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of an individual's race." 42 U.S.C.A. § 2000e-2(a); Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). The elements of a prima facie case of race discrimination under Title VII as it relates to disparate treatment are: (1) membership in a protected class, (2) satisfactory job performance, (3) adverse employment action, and (4) different treatment from similarly situated employees outside the protected class. Coleman, 626 F.3d at 190; Scott v. Health Net Fed. Serv., No. 11-1947, 2012 WL 340216, at *1 (4th Cir. Feb. 3, 2012) (unpublished).

Although Plaintiff can establish membership in a protected class because he is African-America, Plaintiff cannot establish that he was maintaining a satisfactory job performance in light of the letters of warning discussed above. Moreover, even if Plaintiff could establish that he was

21

maintaining a satisfactory job performance, he cannot show that he suffered an adverse employment action. As discussed above, Plaintiff's transfers to the supervisory positions at the Spring Valley Station and the P&DC were not adverse employment actions. See James, 368 F.3d 371, 376-77 (4th Cir. 2004) (finding that reassignment of African-American employee was not adverse employment action and that "an employee's dissatisfaction with this or that aspect of work does not mean an employer has committed an actionable adverse action"). More importantly, Plaintiff voluntarily quit his job in June 2007, and therefore he did not suffer an adverse employment action. Further still, Plaintiff cannot identify any similarly situated individual outside of the protected class that received more favorable treatment. Mere conclusory allegations of disparate treatment cannot support Plaintiff's claim of racial discrimination. Therefore, the Court finds that summary judgment is appropriate with regard to Plaintiff's race discrimination claim.

2.    Hostile Work Environment Claim

As it relates to Plaintiff's hostile work environment claim under Title VII and the Rehabilitation Act, Plaintiff must establish that he suffered harassment that was (1) unwelcome; (2) based on a protected trait; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) that there is some basis for imposing liability on the employer. Pueschel v. Peters, 577 F.3d 558, 564-65 (4th Cir. 2009); Gilliam v. South Carolina Dep't of Juvenile Justice, 474 F.3d 134, 142 (4th Cir. 2007). Here, Plaintiff cannot establish any of the essential elements for a hostile work environment claim. Plaintiff allegations are merely conclusory and he fails to allege sufficient facts to show that he endured any

22

workplace harassment based on a protected trait, such as race or disability, and that such harassment could be imputed to the USPS. Summary judgment is therefore appropriate on this claim as well.

        3.     Retaliation Claim

With regard to Plaintiff's retaliation claim, such a claim is analyzed in the same fashion under both Title VII and the Rehabilitation Act. Burton, 339 F. Supp. 2d at 714 (citing Baird,192 F.3d at 471-72). Plaintiff bears the burden of establishing that (1) he engaged in a protected activity, such as filing an EEO Complaint; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action. Coleman, 626 F.3d at 190; Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998); Perry, 429 Fed. Appx. at 220. Here, Plaintiff does not specify which protected activity he engaged in that would have precipitated retaliation by the USPS. At best, Plaintiff's June 11, 2007, EEO Complaint would constitute a protected activity. However, the EEO Complaint was filed after Plaintiff resigned from the USPS and it therefore could not be the basis for a retaliation claim. Also, Plaintiff provided no evidence which suggests that he filed any other EEO Complaint prior to that which was filed on June 11, 2007. To the extent that Plaintiff would contend that his request for reasonable accommodation was the protected activity, Plaintiff presented no evidence that the USPS took an adverse employment action against him based on his request for accommodation. As discussed above, the USPS provided Plaintiff with reasonable accommodations on multiple occasions in the form of transfers to vacant positions with the same salary and grade. Plaintiff's reassignments in these instances were not adverse employment

actions. The Court therefore finds that summary judgment is appropriate with regard to Plaintiff's retaliation claim.

IV.     CONCLUSION

For the reasons set forth herein, the Court finds that summary judgment is appropriate on all claims raised by the Plaintiff in this case. Plaintiff was not disabled within the meaning of the Rehabilitation Act and is therefore unable to establish a prima facie case of disability discrimination. Plaintiff also failed to establish a prima facie case for constructive discharge, race discrimination, hostile work environment, and retaliation. Defendant's Motion for Summary Judgment [Doc. #24] will be GRANTED, and all of Plaintiff's claims will be DISMISSED WITH PREJUDICE. In addition, Defendant's Motion to Strike Inadmissible, Unauthenticated Attachments to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment [Doc. #29] will be DENIED as moot.

An Order and Judgment consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This, the 13th day of March, 2012.

_James A. Beaty_
United States District Judge